UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GNANH NORA KROUCH,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>WAL-MART STORES, INC.,<br><br>　　　　　　Defendant. | Case No. 12-cv-02217-YGR<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 72 |

　　　　Plaintiff Gnanh Nora Krouch ("Krouch") filed this putative class action against Wal-Mart Stores, Inc. ("Walmart") on May 2, 2012, alleging: (1) violation of the Consumer Legal Remedies Act, Civ. Code[1] § 1750, et seq. ("CLRA"); (2) violation of the Unfair Competition Law, Bus. & Prof. Code § 17200, et seq. ("UCL"); (3) violation of the False Advertising Law, Bus. & Prof. Code § 17500, et seq. ("FAL"); and (4) unjust enrichment. (Dkt. No. 1 ("Complaint"), ¶¶ 28-50.) These allegations stem from Krouch's claim that Walmart's oil change reminder stickers were misleading and caused her to change her car's oil more frequently than the manufacturer's recommendation. (*Id.* ¶¶ 1-2, 10-15, 43.)

　　　　Walmart now moves for summary judgment, seeking dismissal of each claim. (Dkt. No. 72 ("Motion").) Krouch opposes Walmart's motion. (Dkt. No. 76 ("Opposition").) Walmart filed its reply on May 20, 2014. (Dkt. No. 77 ("Reply").) On June 10, 2014, the Court held oral argument on the pending motions.[2]

---

[1] Unless otherwise noted, all statutory references herein are to California law.

[2] After the hearing, the parties provided the Court with supplemental legal authority. (Dkt. Nos. 79-81.)

1  Having carefully considered the papers submitted and the pleadings in this action, the
2  arguments of counsel, and for the reasons set forth below, the Court hereby **GRANTS** Defendant's
3  Motion for Summary Judgment.[3]

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Walmart operates a chain of retail stores. Krouch's lawsuit arises from her claim that Walmart, via adhesive windshield stickers, "has been communicating to all oil change customers at its automobile service centers in California" that their next oil change is due within 3,000 miles or three months, "which is much more frequently than the majority of vehicles require, according to the manufacturers' recommendations." (Complaint ¶¶ 1, 10.)

The material facts proffered by Walmart are largely undisputed. Krouch, a California resident, owns a 2006 Toyota Camry that she purchased in 2009. (Declaration of David E. Bower in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ["Bower Opposition Decl." (Dkt. No. 76-2)], Ex. A [Deposition of Gnah Nora Krouch (December 17, 2012) ("Krouch Dep.")] at 96:12-20, 106:4-5.) When she purchased the Camry, she also received its owner's manual. (UMF No. 1.)[4] Two dashboard lights on the Camry pertain to oil: the Low

---

[3] Krouch argues "[i]t is inappropriate to dismiss Plaintiff's claim prior [to] the close of discovery." (Opposition at 12.) Krouch, however, has not satisfied the declaration requirements of Fed. R. Civ. P. 56(d) and fails to provide the Court with any specific detail as to the relevance of additional discovery sought to the present motion. A number of depositions have already taken place and Krouch admits Walmart has already "produced a voluminous amount of data." (Opposition at 12 n.8.) That production includes "all information on oil changes that relate to Plaintiff's car, regardless of who brought the car in for an oil change." (Reply at 9-10.) Moreover, Krouch failed to raise this concern in a timely fashion even though the briefing schedule for this motion for summary judgment was pre-scheduled. Krouch's passing statement in response to Walmart's request to file a motion for summary judgment is insufficient. (Dkt. No. 57 (stating the motion "seems premature . . . at this time").)

Additionally, Krouch requests any "dismissal" resulting from the pending motion be "without prejudice" and asks that the Court grant her leave to amend her complaint. (Opposition at 13.) Walmart seeks a judgment, not mere dismissal, however, and Krouch has failed to explain what changes to her *pleadings* could address the insufficiency of her *evidentiary* showing. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) (affirming a grant of summary judgment with prejudice); *see also Velazquez v. GMAC Mortgage Corp.*, No. CV 08-05444, 2009 WL 2959838, at *4 (C.D. Cal. Sept. 10, 2009) ("[T]he Court will not permit amendments that amount to a 'backdoor attempt to begin the action anew' where, in all likelihood, 'the original plaintiffs were never qualified to represent the class.'") (citing *Lidie v. California*, 478 F.2d 552, 555 (9th Cir. 1973)).

[4] "UMF" refers to the parties' charts of facts, including undisputed material facts, as reflected in Defendant's Reply to Plaintiff's Response and Supporting Evidence (Dkt. No. 77-2). Unless

1   Engine Oil Pressure Warning Light ("Oil Pressure Light") and the Engine Oil Replacement Light
2   ("Oil Replacement Light").  (UMF Nos. 4-7.)  According to the manual, the Oil Pressure Light
3   "may come on when the oil level is extremely low."  (UMF No. 5.)  Assuming it is reset after the
4   previous oil change, the Oil Replacement Light will illuminate in two circumstances: (1) between
5   4,500 and 5,000 miles after the prior oil change, the light will display for three seconds upon
6   ignition and then flash for twelve seconds thereafter each time the car is turned on; and (2) after
7   5,000 miles from the prior oil change, the light will display upon ignition and remain on so long as
8   the vehicle is running.  (UMF No. 7.)  The guide states that once the Oil Replacement Light begins
9   flashing, the oil should be changed "at an early opportunity" and "[i]f the light comes on, replace
10  it as soon as possible."  (Declaration of Robert J. Herrington in Support of Motion for Summary
11  Judgment ["Herrington Motion Decl." (Dkt. No. 72-2)], Ex. C [Exhibit 17 to Krouch Dep.].)  The
12  2006 Toyota Camry Scheduled Maintenance Guide specifies that the car's oil should be changed
13  every 5,000 miles or six months.  (UMF No. 42.)[5]

14   Krouch admitted seeing her car's oil change reminder light come on a "few times."  (UMF
15  No. 9).  In 2009, the Oil Replacement Light started flickering.  (Krouch Dep. at 96:12-20; 163:25-
16  166:19; 201:23-204:10.)  She referred to her owner's manual, and then eventually called her car
17  dealership, to learn that the light meant she needed an oil change.  (*Id*.)  She also learned how to
18  reset the Oil Replacement Light.  (UMF No. 8.)  After bringing her car into the Hilltop Toyota
19  dealership on April 27, 2009, she was told to get an oil change because the car had been driven
20  around 4,500 miles since the previous service.  (UMF Nos. 11-12.)  She declined to purchase an
21  oil change from the dealership, and instead purchased one from Walmart on May 3, 2009.  (UMF
22  Nos. 13-14.)  Krouch testified that she *only* purchased oil changes from Walmart.  (UMF No. 28.)
23  She continued to see the oil reminder light come on "even after she had oil changes at Wal-Mart."

---

otherwise noted, the references to the material facts include the underlying evidence referenced by either party in support of the fact.  The same applies to citations to the parties' briefs.

[5] Specifically, the guide states "5,000 Miles – 6 Months" as a heading above instructions to perform service activities including replacing the engine oil and oil filter and then resetting the oil replacement reminder light.  (Herrington Motion Decl. at Ex. I.)  Similar service instructions are repeated at 5,000-mile/six-month increments.  (*Id*.)

United States District Court
Northern District of California

(Opposition at 5 (citing Krouch Dep. at 168:12-171:11).)  She purchased those oil changes on the following dates, at which time her odometer reflected the referenced mileage readings:

| Service Provider | Date | Odometer Reading | Evidence | Miles Between Oil Changes[6] |
|---|---|---|---|---|
| **Walmart** | 5/3/09 | 50,553 | UMF No. 14 | |
| **Walmart** | 7/12/09 | 55,376 | UMF No. 15 | 4,823 |
| **Walmart** | 9/28/09 | 60,032 | UMF. No. 16 | 4,656 |
| Midas | 3/24/10 | 69,017 | CarFax Report[7] | 8,985 |
| **Walmart** | 6/12/10 | 72,521 | UMF No. 17 | 3,504 |
| **Walmart** | 1/25/11 | 82,801 | UMF No. 18 | 10,280 |
| **Walmart** | 4/24/11 | 87,366 | UMF No. 19 | 4,565 |
| **Walmart** | 7/2/11 | 90,680 | UMF No. 20 | 3,314 |
| **Walmart** | 10/13/11 | 96,331 | UMF No. 22 | 5,651 |
| **After 3/6/12 CLRA Demand Letter:** | | | | |
| **Walmart** | 3/20/12 | 105,327 | UMF No. 23 | 8,996 |
| **Walmart** | 5/22/12 | 109,867 | UMF No. 24 | 4,540 |
| **Walmart** | 7/23/12 | 114,577 | UMF No. 25 | 4,710 |
| **Walmart** | 9/22/12 | 119,064 | UMF No. 26 | 4,487 |

---

[6] As independently calculated by Walmart and by Krouch's expert witness Dr. Jon Riddle. (Motion at 4 tbl. 1; Bower Opposition Decl., Ex. D, at 20 tbl. 1.)

[7] Walmart argues there is no admissible evidence regarding this oil change, the purported existence of which was reflected in the February 17, 2014 report of Krouch's expert Dr. Riddle. (Bower Opposition Decl., Ex. D at 15; *see also* Bower Opposition Decl., Ex. J (CarFax report).) Walmart contends the underlying evidence of this oil change cited by Dr. Riddle, a CarFax report, is inadmissible hearsay, and further that it is contradicted by Krouch's testimony that she only changed her oil at Walmart.  Krouch did not respond to Walmart's argument regarding the admissibility of this evidence, but suggests it is evidence "that either [Krouch's] boyfriend or son may have had an oil change performed at Midas."  (Opposition at 5 n.6.)  The focus at the summary judgment stage is on the admissibility of the contents of the evidence at trial.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents.")  Drawing all reasonable inferences in plaintiff's favor, the Court will consider this oil change for purposes of this Motion.

1    Krouch changed her oil, on average, approximately every 5,700 miles, according to the available

2    evidence.  (UMF No. 29.)

3          On March 6, 2012, plaintiff's counsel sent a CLRA demand letter to Walmart, claiming

4    Krouch was "deceived and misled about the need for an oil change" due to the oil change sticker

5    Walmart placed in her vehicle.  (UMF Nos. 31, 38.)  Krouch then filed the instant action.  After

6    initiating the present lawsuit, Krouch continued to have her oil changed at Walmart.  (UMF. No.

7    35.)  Krouch testified that she still relied on the sticker even after filing suit.  (UMF No. 37.)

**II. LEGAL STANDARD**

9          Summary judgment is appropriate when no genuine dispute as to any material fact exists

10   and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party

11   seeking summary judgment bears the initial burden of informing the court of the basis for its

12   motion, and of identifying those portions of the pleadings, depositions, discovery responses, and

13   affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

14   *Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the

15   case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The "mere existence of *some*

16   alleged factual dispute between the parties will not defeat an otherwise properly supported motion

17   for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Id.* at

18   247–48 (dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable

19   jury to return a verdict for the non-moving party).

20         Where the moving party will have the burden of proof at trial, it must affirmatively

21   demonstrate that no reasonable trier of fact could find other than for the moving party.  *Soremekun*

22   *v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the opposing party

23   will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the

24   district court that the opposing party lacks evidence to support its case.  *Id.*  If the moving party

25   meets its initial burden, the opposing party must then set out "specific facts" showing a genuine

26   issue for trial in order to defeat the motion.  *Id.* (quoting *Anderson*, 477 U.S. at 250).  The

27   opposing party's evidence must be more than "merely colorable" and must be "significantly

28   probative."  *Anderson*, 477 U.S. at 249–50.  Further, that party may not rest upon mere allegations

1  or denials of the adverse party's evidence, but instead must produce admissible evidence that
2  shows a genuine issue of material fact exists for trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,*
3  *Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000); *Nelson v. Pima Cmty. College Dist.*, 83 F.3d 1075,
4  1081–1082 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute");
5  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) ("conclusory
6  allegations unsupported by factual data are insufficient to defeat [defendants'] summary judgment
7  motion").

8  When deciding a summary judgment motion, a court must view the evidence in the light
9  most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson*,
10 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).  However, in
11 determining whether to grant or deny summary judgment, it is not a court's task "to scour the
12 record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.
13 1996) (internal quotations omitted). Rather, a court is entitled to "rely on the nonmoving party to
14 identify with reasonable particularity the evidence that precludes summary judgment." *See id.*;
15 *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district
16 court need not examine the entire file for evidence establishing a genuine issue of fact, where the
17 evidence is not set forth in the opposing papers with adequate references so that it could
18 conveniently be found."). Ultimately, "[w]here the record taken as a whole could not lead a
19 rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."
20 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations
21 omitted).

22 **III. DISCUSSION**

23 Walmart seeks summary judgment on all four of Krouch's claims, arguing she cannot
24 satisfy at least one element common to each—namely, damages or causation.[8] (Motion at 2.) The

---

[8] The burden is not on the defendant to disprove both of these elements. To the contrary, if either causation or damages could not be found by a rational trier of fact drawing all reasonable inferences in the plaintiff's favor based on the evidence put forward by the parties, then Walmart's motion should be granted.

1   Court concurs that the resolution of whether Krouch suffered any harm as a result of improper
2   conduct by Walmart is common to each of the four causes of action in this case. In order to
3   evaluate the damages element, the Court will consider whether plaintiff has put forward evidence
4   that she was injured by prematurely obtaining an oil change. In order to evaluate the causation
5   element, the Court must assess both the frequency of her Walmart oil changes and the reason
6   plaintiff obtained them. The Court addresses each element in turn.

### A. Damages

#### 1. Legal Framework

All four of plaintiff's causes of action require her to demonstrate she suffered harm—here, monetary damages. With respect to plaintiff's first cause of action, to assert a successful claim under the CLRA[9] a plaintiff must demonstrate both causation and damages. Cal. Civ. Code § 1780(a) ("Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person . . . ."); *Wilens v. TD Waterhouse Grp., Inc.*, 120 Cal. App. 4th 746, 754 (2003) ("Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof.").

Plaintiff's second cause of action, the UCL, also requires a claimant to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Bower v. AT & T Mobility, LLC*, 196 Cal. App. 4th 1545, 1554 (2011) (emphasis in original); *see also* Cal. Bus. & Prof. Code § 17204 (limiting actions for individual relief to those who "*suffered injury in fact* and . . . lost

---

[9] Krouch argues that her CLRA claim cannot be "dismissed" because Walmart filed a motion for summary judgment instead of a motion for determination of "no-merit" pursuant to the CLRA. This posture is not determinative, because federal procedural rules govern. *See Halliwell v. A-T Solutions*, 983 F. Supp. 2d 1179, 1183 (S.D. Cal. 2013) ("[T]he Supreme Court held that federal procedural rules trump inconsistent state rules when a case is brought in federal court.") (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)); *see also Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 957 (N.D. Cal. 2009) (granting motion for summary judgment as to CLRA claim); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1359-1362 (2003) (finding "no meaningful distinction" between dismissal after a motion for summary judgment or after a motion for a no-merit determination).

money or property *as a result of* the unfair competition") (emphasis added).

With respect to plaintiff's third cause of action for violation of the FAL, relief is similarly only available to individuals who have "*suffered injury in fact* and [have] lost money or property *as a result of* a violation of this chapter." Cal. Bus. & Prof. Code § 17535 (emphasis added).

Finally, her fourth cause of action for unjust enrichment also requires a finding that the claimant suffered a loss. *See San Francisco Bay Area Rapid Transit Dist. v. Spencer*, 358 Fed. App'x 793, 795 (9th Cir. 2009) (finding "unjust enrichment claim fails for want of a loss") (citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000) (noting the elements of unjust enrichment are "receipt of a benefit and unjust retention of the benefit at the expense of another").

### 2. Plaintiff's Evidence

Krouch's theory of injury is that she was harmed by paying Walmart for premature oil changes. She puts forth evidence, as reflected in the table above in Section I, demonstrating when and where she obtained each oil change during the relevant period, as well as her car's odometer readings at those times. The only evidence upon which Krouch relies to demonstrate that those oil changes were premature—and therefore, presumably, resulted in an economic loss of some sort— is the recommended schedule set forth in her car's maintenance guide. (Opposition at 2.)[10]

The Toyota Camry's Scheduled Maintenance Guide specifies that the car's oil should be changed every 5,000 miles or six months. Krouch argues that she was harmed whenever she paid for an oil change after driving fewer than 5,000 miles since the prior service.

In addition, plaintiff's expert Dr. Jon Riddle opines that plaintiff was injured as a result of having purchased, on average, about 3.4 oil changes per year[11] when she supposedly needed only two per year based on the manufacturer's time-based guidelines. (Riddle Report at 18.) He bases his opinion on two assumptions: (1) that Krouch decided to obtain oil changes based on the time

---

[10] Plaintiff claims she also "specifically testified she lost money on an unnecessary oil change in reliance upon Defendant's material misrepresentations," citing to lines 157:13-16 and 225:11-18 of the Krouch Dep. (Opposition at 11.) That testimony only reflects a loss by inference.

[11] The Riddle Report inconsistently states that Krouch "purchased 3.4 changes per year" (Bower Opposition Decl., Ex. D, at 18 ("Riddle Report")) and that she "had the car's oil changed every 3.4 months on average" (*Id*. at 16), although both assumptions equal roughly the same frequency and this discrepancy does not impact the Court's analysis.

8

1 interval set forth on Walmart's reminder sticker, rather than the mileage interval; and (2) that the
2 manufacturer recommended an oil change at the *greater* of 5,000 miles or six months.  He claims
3 that Krouch therefore needed only two oil changes each year, and suffered harm by obtaining an
4 average of 3.4 oil changes per year—1.4 more than he deems necessary.  As a threshold matter,
5 the Court will address both of these assumptions.

6       **3.   *Daubert* Challenge**

7 Walmart objects to the Riddle Report as inadmissible under Fed. R. Civ. P. 702 and
8 *Daubert v. Merrell Dow Pharm, Inc.* ("*Daubert*"), 509 U.S. 579 (1993), on the grounds that the
9 report is not supported by sufficient facts, fails to consider alternative explanations, and relies on
10 unsound methodology.  (Reply at 11-15.)
11 An expert may testify if, among other things, "the expert's scientific, technical, or other
12 specialized knowledge will help the trier of fact to understand the evidence or to determine a fact
13 in issue" and "the testimony is based on sufficient facts or data."  Fed. R. Evid. 702.  Trial judges
14 are charged with the responsibility of acting as "gatekeepers" to ensure that an expert's testimony
15 both rests on a reliable foundation and is relevant to the task at hand.  *See Daubert*, 509 U.S. at
16 589.  The Supreme Court has established a two-part analysis for determining whether expert
17 testimony is admissible: (1) "the trial court must make a preliminary assessment of whether the
18 reasoning or methodology underlying the testimony is scientifically valid and of whether that
19 reasoning or methodology properly can be applied to the facts in issue," i.e., whether the proffered
20 testimony is reliable; and (2) "the court must ensure that the proposed expert testimony is relevant
21 and will serve to aid the trier of fact."  *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir.
22 2002) (citing *Daubert*, 509 U.S. at 592–93).  "Expert testimony should not be admitted when it is
23 speculative, it is not supported by sufficient facts, or the facts of the case contradict or otherwise
24 render the opinion unreasonable."  *United States v. Rushing*, 388 F.3d 1153, 1156 (8th Cir. 2004).
25 Under this standard, the Court agrees that Dr. Riddle's testimony is not admissible.  First,
26 as noted in the preceding section, Dr. Riddle rests his opinions on his assumption that Krouch
27 "made her decisions about when to have her Toyota's oil changed . . . based on the 'every three
28 months' prong of Wal-Mart's policies."  (Riddle Report at 15.)  He reaches this conclusion

"[b]ased on my understanding of plaintiff's testimony." (*Id.*) More specifically, the report cites the following portion of her deposition transcript:

> Q: [S]o how often do you get your oil changed? What's your general practice?
>
> . . .
>
> A: I always try to change it because I always—you know how I always change it at Wal-Mart. So I'm very, very—try to keep it, you know, the exact time frame for what's listed there. So I always keep it, like, close to 3,000, or sometime it might tend to go over, yeah.

(Krouch Dep. at 161:18-162:3.) Dr. Riddle focuses on the portion of this testimony that says the "exact time frame for what's listed there" (Riddle Report at 13) to the exclusion of the next sentence which specifically references the mileage component of "3,000" miles.

Plaintiff testified unambiguously that she tries to stick "close to 3,000 [miles] or sometime it might tend to go over." (Krouch Dep. at 161:18-162:3; *see also* Dkt. No. 1 at 20 (Plaintiff's Venue Declaration) at ¶ 3 ("I purchased the oil change in reliance on the statements on the sticker that Wal-Mart placed on my windshield stating that another oil change was needed within 3000 miles. Had I known that the oil change was unnecessary, I would not have purchased it.").) In light of plaintiff's testimony, Dr. Riddle cannot base his opinion on an assumption for which the factual foundation is lacking in order to put forth an alternative theory of the case simply to avoid summary judgment. *See Elsa Polo v. Innoventions Int'l LLC.*, No. 13-cv-830, 2014 WL 1778944, at *4-5 (C.D. Cal. May 1, 2014); *see also Herrera v. United States*, No. 09-cv-0756, 2010 WL 4236974, *7-8 (S.D. Cal. Oct. 21, 2010) (finding testimony insufficient to create a genuine issue of material fact where substantial undisputed evidence contradicted that testimony).

Next, Dr. Riddle interprets the Toyota Camry's maintenance guide at the section entitled "5,000 Miles—6 Months" to mean the greater of the two, that is, that a driver could optionally wait six months between oil changes no matter how many miles she had driven in the meantime. (Supplemental Declaration of Robert J. Herrington in Support of Reply in Further Support of Motion for Summary Judgment [Dkt. No. 72-2], Ex. P [Deposition of Jon M. Riddle, Ph.D.] at 96:18-25; Riddle Report at 16.) Walmart contends this is not a reasonable interpretation of the

10

instruction. (Reply at 15.) The Court agrees. Dr. Riddle's interpretation of the manual strains credulity. Further, nothing in Dr. Riddle's expertise provides him with a basis to suggest this alternative interpretation. The plain meaning of the owner's manual is fully within the comprehension of the jury. Dr. Riddle does not have any specialized knowledge upon which he bases this opinion. The focus on the heading of the maintenance guide itself is insufficient to support the opinion. The guide clearly calls for an oil change at the *lesser* of 5,000 miles or six months.

Because the Riddle Report is based on unfounded and contradicted assumptions, the Court finds that Dr. Riddle's testimony would not be admissible at trial. Therefore, the Court will exclude the Riddle Report from the evidence it considers on summary judgment.

**4.  Analysis**

At the summary judgment stage, the Court will draw all reasonable inferences in plaintiff's favor and assume that obtaining an oil change earlier than the manufacturer recommends necessarily results in some unspecified economic loss. Conversely, however, the Court finds for purposes of this analysis that obtaining an oil change when the car manufacturer recommended it does not result in an injury. Krouch has put forth no evidence to undercut this assumption.[12]

Krouch argues that she was harmed whenever she obtained an oil change after driving fewer than 5,000 miles since the prior change. The record presented evidences that during the period in question, Krouch changed her oil, on average, approximately every 5,700 miles. (UMF No. 29.) Compared with even the 5,000-mile manufacturer recommendation, Krouch received fewer oil changes during the relevant time period than was recommended for her vehicle. Walmart argues this shows Krouch did not obtain excess oil changes and consequently suffered no injury. Averages alone, however, are not sufficiently persuasive where the Court must draw all reasonable inferences in Krouch's favor. After all, a single oil change could potentially result in

---

[12] Indeed, Krouch concedes that her manufacturer "'has the best knowledge as to the proper maintenance schedule by virtue of its firsthand involvement in designing, engineering, manufacturing and monitoring Toyota Camrys through many warranty cycles.'" (Opposition at 3 n.2 [quoting Riddle Report at 5-6].)

11

1     an injury or skew the stated "average."

2     The owner's manual recommends the driver obtain an oil change "at an early opportunity
3     depending on the driving and road conditions" as soon as the Oil Replacement Light begins
4     flashing, which occurs at 4,500 miles after the prior oil change.  (Motion at 3.)  Using this 4,500-
5     mile warning-light metric, Krouch only obtained three Walmart oil changes that would potentially
6     qualify as causing her a loss.  They occurred on June 12, 2010 (3,504-mile interval), July 2, 2011
7     (3,314-mile interval), and September 22, 2012 (4,487-mile interval).  The Court analyzes each.
8     First, with respect to the June 12, 2010 oil change, while plaintiff may argue that she suffered
9     minimal economic injury, it could not have resulted from Walmart's conduct because, as
10    addressed below, it was preceded by a Midas oil change.  Next, the evidence reveals that the July
11    2, 2011 oil change occurred when plaintiff's oil was a half-quart low, and plaintiff has put forth no
12    evidence suggesting obtaining an oil change under those circumstances caused her any economic
13    injury.  Indeed, it may have been preceded by her car's Oil Pressure Light turning on while she
14    was driving, in which case the owner's manual recommends "pull[ing] off the road . . . [and]
15    [c]alling a Toyota dealer or qualified repair shop for assistance."  (Herrington Motion Decl., Ex. C
16    at KROUCH0019.)  Finally, the September 22, 2012 oil change took place 4,487 miles after the
17    prior oil change—just 13 miles shy of the manufacturer's 4,500-mile recommendation.  The Court
18    is not willing to find that one 13-mile delta is sufficient to establish harm.  Moreover, this oil
19    change occurred *after* the filing of the lawsuit, significantly weakening any claim of causation,
20    discussed more fully below.

21    Having considered plaintiff's theory of damages and found it largely lacking, the Court
22    next addresses the causation element.

23    **B. Causation**

24    **1. Legal Framework**

25    With respect to the causation element, the parties do not dispute its commonality to each of
26    plaintiff's claims.  *See Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008) ("The phrase 'as a
27    result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal
28    connection or reliance on the alleged misrepresentation."); *Brownfield v. Bayer Corp.*, No. 2:09-

12

cv-00444, 2009 WL 1953035, at *3 (E.D. Cal. July 6, 2009) ("California requires a plaintiff suing under the CLRA . . . to plead and prove she relied on a material misrepresentation."); *Wilens v. TD Waterhouse Grp., Inc.*, 120 Cal. App. 4th 746, 754 (2003) ("Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof."); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010) (finding a UCL claim requires proof of causation and reliance); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1093 (S.D. Cal. 2010) (finding a claimant "alleging violations of the FAL must allege actual reliance"). For the elements of unjust enrichment to be satisfied, there must also be a sufficient causal nexus between an alleged injury and the conduct of the accused party such that the accused party was *unjustly* enriched. *See Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1073 (N.D. Cal. 2009), *aff'd*, 633 F.3d 1067 (Fed. Cir. 2010) ("[E]ven when a party has received a benefit from another, it is required to make restitution only if the circumstances of its receipt or retention are such that, as between the two parties, the retention of the benefit is unjust. This requires wrongful conduct on the part of the party receiving the benefit.") (internal citation omitted). "[R]eliance is proved by showing that the defendant's misrepresentations or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1111 (1993).

**2. Analysis**

Plaintiff argues that Walmart's stickers caused her injury by leading her to obtain unnecessary oil changes. Walmart challenges this assertion, arguing that even if plaintiff was harmed by obtaining a premature oil change, she did not do so in reliance on Walmart's reminder sticker. Walmart submits that the only evidence proffered in support of plaintiff's causation theory is her uncorroborated and self-serving claim that she relied only on the Walmart sticker in determining when to change her car's oil. Walmart asserts this testimony is belied by the undisputed facts in this case and need not be credited. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.").

The Court agrees. The undisputed evidence contradicts plaintiff's testimony, which can

only be reasonably viewed as a self-serving attempt to avoid summary judgment.  On three occasions, Krouch far exceeded Walmart's recommended 3,000 miles, waiting 8,985, 10,280, and 8,996 miles between oil changes.  Indeed, all of the relevant oil changes, except for three, occurred after the Oil Replacement Light would likely have begun flashing.  As discussed above, those three occurred on June 12, 2010, July 2, 2011, and September 22, 2012.

The June 12, 2010 oil change, according to evidence offered by plaintiff, was preceded by a Midas oil change.  Therefore, even if it was premature, it would not have been precipitated by a Walmart reminder sticker.

The records for the July 2, 2011 oil change reveal that the car's oil was a half-quart low prior to the service, and therefore it might have been precipitated by the car's Oil Pressure Light illuminating.  (Herrington Motion Decl., Ex. F at KROUCH0004 (Service Order).)  Despite this evidence, plaintiff still maintains she obtained this oil change in reliance on Walmart's sticker.  The claim rings hollow and this supports a finding that in this instance the testimony is merely self-serving.

Finally, on September 22, 2012, after having filed the instant lawsuit, plaintiff obtained an oil change at just under 4,500 miles since the previous oil change.  On this and other occasions, even after accusing Walmart of providing misleading stickers in a letter and ultimately filing this lawsuit on that basis, Krouch continued to obtain oil changes from Walmart before reaching the 5,000-mile manufacturer service recommendation.  This ongoing conduct is critical as it relates to the September 22, 2012 oil change in particular, but it also more generally undercuts Krouch's claim that Walmart's representations were material to her decisions to obtain oil changes prematurely.  *Cf. Leong v. Square Enix of Am. Holdings, Inc.*, No. CV 09-4484, 2010 WL 1641364, at *3-4, *11 (C.D. Cal. Apr. 20, 2010), *aff'd*, 462 F. App'x 688 (9th Cir. 2011) (holding plaintiff's continued payment of monthly subscription fees pursuant to a user agreement suggested she did not consider a particular term of the agreement material and dismissing CLRA, UCL, and FAL claims).  The statement respecting this last oil change, again, is self-serving and does not create a genuine issue of material fact.

Accordingly, the Court finds that no reasonable fact finder could conclude that Krouch

14

suffered an injury in fact (e.g., a loss of money or property) as a result of Walmart's conduct. Summary judgment on these grounds is therefore appropriate.

## IV. CONCLUSION

Because plaintiff has failed to put forth evidence that could lead a reasonable trier of fact to find in her favor, the Court hereby **GRANTS** defendant's Motion for Summary Judgment as to all claims. Defendant shall confer with plaintiff and provide a proposed form of judgment within seven business days.

This Order terminates Dkt. No. 72.

**IT IS SO ORDERED**.

Dated: October 28, 2014

_____
YVONNE GONZALEZ ROGERS
United States District Court Judge

United States District Court
Northern District of California

15